UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO S.,[1]<br>Plaintiff,<br>v.<br>FRANK BISIGNANO, Commissioner of Social Security,<br>Defendant. | Case No.: 24-cv-2354-MMP<br>**ORDER AFFIRMING ALJ DECISION**<br>[ECF No. 15] |

Alfonso S. ("Plaintiff"), proceeding pro se, appeals the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. ECF Nos. 8 at 3–4; 11 at 4–5. Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g), asserting the Administrative

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

Law Judge ("ALJ") made a legal error when determining Plaintiff had not established residency in the United States from May 2015 through December 2019. ECF Nos. 8 at 7–8; 15 at 20–22.

This matter comes before the Court on Plaintiff's Merits Brief. ECF No. 15. Defendant filed a Responsive Brief. ECF No. 17. Plaintiff did not file a Reply. The parties have consented to the undersigned for all purposes. ECF No. 4.

After a thorough review of the parties' submissions, the administrative record, the applicable law, and for the reasons set forth below, the Court **AFFIRMS** the Commissioner's final decision.

## I. BACKGROUND

Plaintiff filed an application for, and successfully obtained, SSI in 2003. Administrative Record ("AR") 252. Since then, Plaintiff has intermittently received SSI benefits. On multiple occasions, the Social Security Administration ("SSA") found Plaintiff was ineligible for SSI because he failed to establish U.S. residency and was consistently outside of the United States. AR 253–54. Upon being found ineligible for SSI, Plaintiff would seek reconsideration. *See, e.g.,* AR 206; 220. SSA would then hold a redetermination. AR 253. Redeterminations were completed in July 2003, December 2004, August 2010, April 2014, September 2014, and April 2017. *Id.*

Relevant here, on May 3, 2017, the SSA determined Plaintiff was "outside of the United States" from March 2015 through May 2017 and therefore ineligible for SSI. AR 216. The SSA also stopped providing Plaintiff Social Security from June 2017 forward due to the same residency issue. *Id.* Plaintiff requested reconsideration on May 16, 2017. AR 220; 255.

The SSA denied Plaintiff's request for reconsideration on July 6, 2017, finding Plaintiff "had signed a statement where [he] stated that [he] spend about 5 days each week in Mexico, which puts [him] as having to [sic] places of residence." AR 222. In response, Plaintiff requested a hearing before an ALJ disputing the non-US residence determination. AR 225–29. The SSA sent Plaintiff a notice of hearing on November 15, 2017. AR 281–

83. ALJ Peter Valentino held the hearing on June 13, 2019. AR 86–135. Plaintiff represented himself at the hearing. AR 86. ALJ Valentino issued a decision on October 2, 2019, finding Plaintiff "was outside of the U.S. for at least 30 consecutive days and thus became ineligible for SSI benefits" and thereafter "has not acted to reinstate SSI benefits by residing in the U.S. for 30 consecutive days or more as required (POMS 00501.410)." AR 396–97. ALJ Valentino determined Plaintiff was liable for repayment of $23,865.40 for SSI payments from March 1, 2015, to May 1, 2017. AR 397.

Plaintiff requested Appeals Council review. AR 566. The Appeals Council ultimately remanded for an ALJ to "[e]nsure that the claimant is fully advised of his right to representation . . . if the claimant continues to remain unrepresented[,]" and "[d]etermine whether the claimant was ineligible to receive SSI payments from May 2015 through December 31, 2019 due to the failure to establish U.S residency for 30 consecutive days."[2] AR 567.

On April 11, 2024, ALJ Kim Soo Nagle conducted a hearing in accordance with the Appeals Council's instructions on remand at which Plaintiff, proceeding pro se, appeared and testified. AR 19–29. On May 8, 2024, ALJ Nagle issued a partially favorable decision, denying benefits for the time period May 2015 through December 2019. AR 13–29.[3]

---

[2] The Appeals Council determined May 2017 through December 2019 was also at issue because Petitioner remained in an "ineligibility pay status due to non-U.S. residency through December 2019." AR 567.

[3] Regarding the portion of the decision that was favorable for Plaintiff, ALJ Nagle determined the principle of administrative finality barred the SSA's May 2017 reopening and revision of Plaintiff's March 1, 2015, and April 1, 2015, benefits determination. Therefore, the ALJ ordered the Field Office to "issue a corrected Notice of Overpayment, removing those overpayments reportedly accruing from March 1, 2015, through April 1, 2015." AR 29.

Plaintiff requested Appeals Council review, which was denied on October 7, 2024. AR 3–5. The ALJ's decision then became the final decision of the Commissioner of Social Security. 42 U.S.C. § 405(h).

Plaintiff timely appealed the denial to this Court for federal judicial review of the ALJ's decision regarding his SSI benefits eligibility pursuant to 42 U.S.C. § 405(g). ECF Nos. 1, 8.

## II. ISSUE IN DISPUTE

There are two requirements for SSI benefit eligibility. AR 23. First, an individual must be a U.S. resident. 20 C.F.R. § 416.202(b); GN 00303.740(A)(1). Second:

> Once eligible, meet the physical presence in the U.S. requirement. (An individual cannot be paid SSI benefits for any month during all of which they are outside the U.S. An individual who was outside the U.S. for 30 consecutive days or more must be present in the U.S. for an additional 30 consecutive days before SSI benefits are reinstated.)

GN 00303.740(A)(1).

The issue before ALJ Nagle on remand was:

> Whether the claimant was eligible for payment of SSI benefits, under sections 1611 and 1614 of the Social Security Act, from March 2015 through December 2019, more specifically whether the claimant was ineligible for payment, for failure to establish United States residency or to maintain a physical presence in the United States, during that period.

AR 21.

The disputed issue before this Court is if Plaintiff established United States residency for May 2015 through December 31, 2019.

## III. SUMMARY OF ALJ'S FINDINGS

The ALJ found the "evidence does not clearly prove that, from May 2015 through December 2019, there was any calendar month during 'all of which' the recipient was 'outside the United States[.]'" AR 23. Instead, the ALJ determined the evidence only supported a finding that Plaintiff traveled "back and forth, from Calexico, California, to

Mexicali, Mexico, several times per month," meaning the second requirement of physical presence to receive SSI benefits could be met. AR 23–24.

The ALJ then turned to the U.S. residency requirement. The ALJ determined Plaintiff did not provide "sufficient evidence to establish they resided in the U.S. during the period at issue." AR 24 (citing POMS GN 00303.740(C)(1) ("NOTE: It is normally the claimant's responsibility to provide evidence to establish that they are living in the U.S.")).

Therefore, the ALJ held due to a "lack of U.S. residency," Plaintiff was ineligible for SSI benefits from May 1, 2015, through December 31, 2019. AR 29.

## IV. STANDARD OF REVIEW

The Court may set aside an ALJ's decision to deny benefits "only if it is not supported by substantial evidence or if it is based on legal error." *Nadon v. Bisignano*, 145 F.4th 1133, 1136 (9th Cir. 2025) (citation omitted).

The substantial-evidence standard requires a reviewing court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (citation modified). Substantial evidence "means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Obrien v. Bisignano*, 142 F.4th 687, 693 (9th Cir. 2025) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation modified)). The standard requires "more than a mere scintilla, but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015), *as amended*). Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

A court may also reverse the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the ALJ committed legal error, a court may not reverse an ALJ's

decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id*. at 932 (citation modified) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Pleadings from pro se plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers," and are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court affords pro se plaintiffs the "benefit of any doubt." *Hopkins v. Berryhill*, 697 Fed. App'x 892, 892 (9th Cir. 2017) (quoting *Bretz v. Kellman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

## V. ANALYSIS

This case is controlled by *Higbee v. Sullivan*, 975 F.2d 558 (9th Cir. 1992). The Court explained in *Higbee*:

> Recipients are responsible for providing documentation and other evidence to establish that they fulfill residency and other eligibility requirements. *See* 20 C.F.R. 416.200; *see also* 20 C.F.R. § 416.708(a) (stating that S.S.I. recipients must keep the S.S.A. apprised of their current residence and mailing addresses); 20 C.F.R. § 416.1600–1618 (describing residency requirement and documents that may be used to show United States residence).

*Id.* at 561. An SSI benefit recipient must be a resident of the United States. *Id.* Furthermore, "the ALJ is not a mere umpire at [the administrative hearing], but has an independent duty to fully develop the record," particularly where the claimant is unrepresented. *Id.* However, the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

Here, the record before the ALJ was thorough, consisting of over one hundred exhibits, evidence over a ten-year period, a prior ALJ hearing, and an appeals council remand. AR 46; 50–51; 56. The ALJ asked questions regarding Plaintiff's residence at his claimed address, 802 Second Street in Calexico, between May 2015 and December 2019. AR 57–64. The questions included how long he lived at 802 Second Street, if he was employed while he lived there, what his rent was, how many people lived there, and

businesses Plaintiff frequented while he lived there. AR 58–72. Therefore, the Court finds (a) the record was not inadequate to allow for proper evaluation of the evidence and (b) even if the record was inadequate, the ALJ satisfied her duty to develop the record further via detailed questions at the hearing.

Therefore, the Court analyzes two factors: (1) Is the ALJ's finding supported by substantial evidence, and (2) Did the ALJ commit legal error, and if so, was it harmless? The Court takes each factor in turn and **AFFIRMS** the final decision denying benefits.

a. The ALJ's Finding is Supported by Substantial Evidence

Substantial evidence supports the ALJ's finding Plaintiff was not a U.S. resident from May 2015 through December 2019. AR 29. "U.S. residency is usually demonstrated by evidence that indicates the individual is an active participant in the U.S. community where they reside, with a strong economic and social attachment to the U.S." POMS GN 00303.740(A)(2).[4] "Convincing evidence" of U.S. residency can include:

> b. Proof of U.S. home ownership or rental lease or rent payment record;
>
> . . .
>
> d. U.S. driver's license;
> e. Telephone directory listing;
> f. Regular and frequent participation in social programs such as vocational rehabilitation, Meals on Wheels or evidence showing that the claimant regularly receives services from a social agency;
> g. Proof of employment, such as pay stubs or a contract;
> h. Proof of active participation in a religious, fraternal, or social organization;
> i. A record of volunteer activity which shows regular and frequent performance;

---

[4] The POMS manual is the "operating instructions for processing Social Security claims[.]" *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 385 (2003). POMS is an agency interpretation that "does not impose judicially enforceable duties on either [the] court or the ALJ." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010). "However, POMS is 'persuasive authority.'" *Michael M. v. Bisignano*, No. 24-cv-01777-W-JLB, 2026 WL 395773, at *6 (S.D. Cal. Feb. 11, 2026) (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006)).

j. Clinic cards or doctor's record showing dates of visits for regular medical treatment;
k. Proof of a local U.S. bank account or check-cashing card at a local establishment; and
l. Correspondence addressed to the claimant.

AR 21–22 (citing POMS GN 00303.740(C)(1)).

The ALJ evaluated the evidence Plaintiff presented and made the following findings in support of her determination.

First, the ALJ analyzed Plaintiff's work history. The ALJ found Plaintiff submitted one document indicating he performed "field work" from "2003 to 2018, only to imply the work had been performed up to '2013' and '2014,' not later." AR 24 (citing AR 327). At the hearing, Plaintiff could not identify the company name(s) nor location where he performed the "field work." AR 24. Finally, "[e]arnings queries which were run in December 2021 showed that 2009 had been the most recent year the recipient had reported any type of wages/earnings." *Id.* However, due to Plaintiff's age, seventy-eight years old at the time of the hearing, the ALJ concluded a "paucity of reported earnings since turning 60 is not damning." *Id.* In sum, the ALJ found Plaintiff's work history unconvincing but nondeterminative.

Second, the ALJ reviewed Plaintiff's medical provider evidence. Plaintiff's last reported visit to a medical provider was on February 6, 2019, for a provider in Mexico. AR 24 (citing AR 325). Plaintiff listed one medical provider in the United States, but the provider completed his disability paperwork in 2018, rather than providing medical treatment. AR 24–25 (citing AR 325, 333–34). The ALJ found, on balance, the evidence suggested Plaintiff's medical treatment was overseen by individuals in Mexico in 2018 and 2019. AR 29. Furthermore, from 2015 to May 2017, the ALJ determined Plaintiff failed to submit "any proof of regular medical care in the United States[.]" *Id.* Therefore, Plaintiff's medical records did not "show[] dates of visits for regular medical treatment" in the United States and did not support Plaintiff's residency allegations. *See* POMS GN 00303.740(C)(1)(j).

Third, the ALJ considered various other aspects which can be "convincing evidence" of U.S. residency:

> The recipient has not provided evidence showing regular and frequent volunteer activity, within the United States, during the period. There is no evidence, moreover, the recipient was an "active" participant in a religious, fraternal, or social organization during the period. At most the recipient claimed, in a lengthy response [] to an OIG report, to have gone to a Bible study group hosted by his former landlord in June 2019. At the hearing the recipient claimed to have been a member of a church "or other social group" in the United States "[a] very long time ago," in "high school." He referred later only to 7th Day Adventist meetings to which he was invited, during the period at issue, "not very often."

AR 25 (internal citations omitted).

The ALJ also analyzed Plaintiff's living arrangements. *Id.* Plaintiff never claimed to own property in the United States. *Id.* Plaintiff provided contradictory information regarding his whereabouts in the relevant timeframe. He submitted less than 10 rent receipts for his alleged United States address, three of which for $50 or less. AR 26. When an Office of Inspector General investigator spoke to Plaintiff's landlord in August 2019, the landlord stated Plaintiff "had stopped paying rent. Although she had 'allowed him to use a laundry room to store his personal effects,' she also stated 'the [Plaintiff] [had] told her he just needed the address 'to solve [his] problems – he was expecting a lump sum and wanted an address for his checks." *Id.* The ALJ found the "few rent receipts" submitted by Plaintiff were not convincing evidence, particularly where "the [Plaintiff's]'s rent was paid irregularly; and the [Plaintiff] was barely seen for several months before the August 8, 2019, OIG investigation." AR 29.

Additionally, the ALJ compared Plaintiff's statement that he was in Calexico most weekdays "with his earlier reports regarding his spending of *four or five days per week,* for *several years*, in Mexico." AR 26 (emphasis in original).

Plaintiff provided two letters on his behalf. AR 369; 370. The ALJ found neither adequately supported Plaintiff's residency claim. AR 29. Rather, the letters proved "only

that (i) the [Plaintiff] held a [Private Mailbox] rented by one of them and (ii) was seen sporadically by each of them." *Id.*; *see* GN 00303.740(C)(2)(b).

Finally, the ALJ reviewed Plaintiff's bank accounts. POMS SI 00303.740(C)(1)(k). Plaintiff claimed to have two bank accounts in April 2017. AR 28. One was in Mexico. The second was in the United States, nearly worthless, and allegedly where Plaintiff's SSI payments went. *Id.* For the United States account, after Plaintiff's SSI payments stopped, the account was deactivated for nonpayment. The ALJ determined one United States bank account primarily used to receive SSI payments does not prove U.S. residency. *Id.*

In sum, the Court finds substantial evidence supports the ALJ's finding that Plaintiff was not a U.S. resident from May 2015 through December 2019. The ALJ thoroughly reviewed the written records and developed the record adequately during the hearing. As the Ninth Circuit explained in *Higbee*, "[r]ecipients are responsible for providing documentation and other evidence to establish that they fulfill residency and other eligibility requirements." 975 F.2d at 561. The ALJ determined Plaintiff did not meet his burden, and the ALJ's decision is supported by substantial evidence.

b. <u>The ALJ Did Not Commit Legal Error</u>

Construing Plaintiff's argument broadly, Plaintiff argues the following: (1) the ALJ improperly determined he did not meet the "physical presence" requirement, (2) the ALJ improperly determined he was outside of the United States from March 2015 through May 2017, and (3) the ALJ's granting of benefits for March and April 2015 but denying benefits for May 2015 to December 2019 is inconsistent and improper. ECF No. 15 at 23–24. None of Plaintiff's arguments support legal error.

First, the ALJ found the "evidence does not clearly prove that, from May 2015 through December 2019, there was any calendar month during 'all of which' the recipient was 'outside the United States (U.S.).' POMS SI 00501.410A1." AR 23. Therefore, the ALJ determined the 'physical presence' requirement did *not* preclude SSI benefit eligibility. In other words, the ALJ's physical presence determination was in favor of Plaintiff. Even if the Court did find the ALJ erred in her 'physical presence' analysis, any

error was harmless because it is "inconsequential to the ultimate nondisability determination," which here rose and fell on Plaintiff's U.S. residency requirement. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted).

Second, the ALJ analyzed if Plaintiff was a U.S. resident during the relevant time period. AR 23–24. As explained above, *Higbee* is the controlling case for this issue: the burden was on Plaintiff to "provide[] documentation and other evidence to establish" he fulfilled residency and eligibility requirements. 975 F.2d at 561. He failed to do so, and the Court finds the ALJ did not commit legal error in her U.S. residency analysis.

Third, the Court disagrees the ALJ's findings awarding him benefits for March and April 2015 but denying benefits for May 2015 through December 2019 are inconsistent. AR 29. The ALJ did not make a residency determination for March and April 2015, instead finding the "principle of administrative finality barred . . . the SSA's reopening and revision (in May 2017) of the" March and April 2015 determinations. *Id.* As Defendant states, the March and April 2015 finding was "too much time had passed" and the "SSA had erred" in reopening those determinations. ECF No. 17 at 8. *See also* POMS SI 04070.040(A)–(B). However, the ALJ did make a negative residency determination for May 2015 through December 2019. The same time bar did not apply for May 2015 through December 2019, and the ALJ correctly proceeded with a benefits determination analysis for that period. The Court finds the ALJ did not commit legal error.

## VI. CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the Commissioner's final decision denying benefits. Accordingly, **IT IS HEREBY ORDERED** that judgment be entered in favor of Defendant Commissioner of the Social Security Administration and against Plaintiff.

**IT IS SO ORDERED**.

Dated: September 16, 2026

HON. MICHELLE M. PETTIT
United States Magistrate Judge